## ÆTNA LIFE INS. CO. v. ALLEN et al.

### No. 3552.

Court of Civil Appeals of Texas. Beaumont.

Nov. 23, 1939.

On Rehearing Jan. 17, 1940.

Gordon, Sharfstein, Bell & Weinert, of Beaumont, for appellant.

Mike Daughtry and Howth, Adams & Hart, all of Beaumont, for appellee.

WALKER, Chief Justice.

On the 2nd day of April, 1936, appellant, Ætna Life Insurance Company, issued and delivered to Mrs. Ruby King (now Mrs. H. S. Allen) as an employee of the Rosenthal Dry Goods Company of Beaumont, a policy of insurance whereby, upon the following conditions, appellant agreed to pay appellee the principal sum of $1,000: "If an employee, before attaining the age of sixty years, and while insured hereunder, becomes totally disabled and presumably will thereafter during life

be unable to engage in any occupation or employment for wage or profit * * * such employee shall be deemed to be totally and permanently disabled. Upon receipt at the home office of the company (Ætna Life Insurance Company) during the continuance of insurance on such employee of satisfactory evidence of such disability, the company will pay the amount of insurance in force upon such life at the time such disability commenced, in lieu of all other benefits provided on such life under this policy."

The group policy issued by appellant to the Rosenthal Dry Goods Company as employer was No. 3741; appellee's certificate as an employee was No. 131. This suit was instituted by appellee against appellant to recover the principal sum of $1,000 with damages and attorney's fees, on allegations of permanent total disability within the policy provisions. Appellant answered by general demurrer, special exceptions and general denial.

It is conceded that the policy was in full force and 'effect; that the statutory damages on the amount sued for was $120; that $370 was a reasonable attorney's fee. On the verdict of the jury, on the 5th day of December, 1938, judgment was rendered in favor of appellee for the principal sum sued for, and the damages and attorney's fees agreed upon, making a total recovery of $1,490, with interest at the rate of six per cent per annum from the date of judgment until paid, together with all costs of suit.

▆ Appellant has briefed its case under assignments of error, without supporting propositions. Appellee, by motion duly filed, has moved to strike the brief on the ground that it was prepared in violation of the briefing rules. The motion is overruled. Under the present statutes regulating briefing, propositions are not an essential element of the brief.

▆ By assignments one to seven, appellant complains of the refusal of the court to submit certain requested issues on its defense, affirmatively plead, that appellee's disability, if any, was temporary and not permanent. On a review of the evidence, we agree with appellant, as against appellee's contention, that the evidence raised that issue. But it is our conclusion that appellant's defense was satisfactorily submitted to the jury by special issue No. 6 of the court's charge. We give the

court's charge on the issue of permanent total disability:

"Special Issue of Fact No. 3

"Do you find, from the preponderance of the evidence that at the date when Mrs. H. S. Allen ceased to be an employee of The Rosenthal Dry Goods Company she had sustained total disability, within the meaning of the definition heretofore given you?

"Special Issue of Fact No. 4

"Do you find, from the preponderance of the evidence, that such 'total disability' (if you have so found) was and is permanent within the meaning of the definition of 'permanent total disability' as above given you?

"Special Issue No. 6

"Do you find from a preponderance of the evidence that at some time during plaintiff's future life she will be able to pursue some occupation or employment which by ability, education, experience and training she is qualified to perform for wage or profit?"

Issues Nos. 3 and 4 were answered in the affirmative; issue No. 6 in the negative. It is our conclusion that special issue No. 6 carried to the jury every element of appellant's affirmative defenses. Appellant requested the court to submit to the jury the following issue:

"Special Issue No. C

"Do you find from a preponderance of the evidence that at some time during plaintiff's future life she will be able to pursue some occupation which by ability, education, experience and training she can perform, and which will be of profit to her?"

Special issue No. 6 was in substance appellant's special issue No. C.

The court gave in charge to the jury the following definition of permanent total disability:

"(b) 'Total disability' is defined as follows:

" 'Any employee shall be deemed totally disabled if sickness or disease continously prevent the employee from performing any and every duty pertaining to his or her occupation.'

"By 'total disability' (if any) that prevented plaintiff, Mrs. H. S. Allen, from performing any and every kind of duty pertaining to her occupation, as above used, is meant such disability as would prevent

the said Mrs. H. S. Allen, from performing substantially, or to some material extent, any and every part of the business pertaining to her occupation, or such disability as that ordinary care in the preservation of her life and health would require that she desist from the transaction thereof.

"(c) 'Permanent total disability' means and is defined as follows:

" 'If such total disability (if any) as mentioned in Subsection (b) immediately preceding, began before plaintiff, Mrs. H. S. Allen, was sixty years of age and thereafter presumably during her life, will prevent her from pursuing any occupation or employment for wage or profit, then she shall be deemed permanently and totally disabled.'

"You are instructed that by the phrase 'permanent total disability' (if any) that prevented her, the said Mrs. H. S. Allen (if it did prevent her) from pursuing any occupation for wage or profit, as used in this connection, is meant such disability as presumably during the life of the said Mrs. H. S. Allen would prevent her from pursuing and performing substantially, or to some material extent, any and every part of the business pertaining to any occupation for wage or profit, or such disability as that ordinary care, in the preservation of her life and health, would require that she desist from pursuing any occupation whatever for wage or profit."

We overrule appellant's exceptions that the court's definition constituted "a general charge contrary to the special issue law of the State of Texas," and that it was on the weight of the evidence in that it instructed the jury: "As drafted said definition constitutes an instruction upon the facts of the case as to what facts should show total and permanent disability and is in effect an instruction to the jury as to how to answer subsequent issues in the Court's charge using said term." Nor was the definition subject to the exception that it advised the jury that, if it "should find certain facts to exist," the facts so found would "amount to total and permanent disability." We also overrule the exception that the definition constituted "a discussion of the case, in effect telling the jury how to answer particular questions in view of particular findings." As we construe the language of the charge, it was nothing more than a definition of the legal terms used in the charge, and left the jury free to answer the special issues "yes" or "no" as instructed by the court, without any suggestion or intimation as to the legal effect of its answers.

Appellant also excepted to the definition on the following additional grounds:

(a) "As drafted, said definition confines the jury in its deliberation to the occupation in which such employee was engaged at the time that such disability is claimed to have become operative and thereby places upon the defendant a more onerous burden than is placed by the policy herein sued upon."

(b) "Said so-called definition as drafted places a greater burden upon the defendant than imposed by the insurance policy herein sued upon in that it restricts the jury in its consideration to any disability which might prohibit the plaintiff from engaging in the identical occupation and employment in which she was engaged at the time her alleged total disability originated."

(c) "As drafted said issue casts upon this defendant a more onerous burden than that required by the policy sued upon, to the prejudice of this defendant, and which said objection was duly and timely presented to the Court and by the Court overruled, whereupon Defendant excepted."

These exceptions are overruled. In the first part of the definition the court used this language: "Any employee shall be deemed totally disabled if sickness or disease continuously prevent the employee from performing any and every duty pertaining to his or her occupation." By the language, "her occupation", the court did not limit the issue of "permanent total disability" to the occupation in which appellee was engaged on the date the total disability accrued. Mr. Chief Justice Bond, writing for the Dallas Court of Civil Appeals in Jefferson Standard Life Ins. Co. v. Curfman, 127 S.W.2d 567, 571, gave the following definition of "occupation," applicable to and controlling the definition of that term as used in the contract of insurance in issue in this case, and as used in the court's charge: "The word 'occupation' [used in the present certificate] as used in an insurance policy * * * means the vocation, profession, trade, or calling which the assured has been engaged in for hire or profit, and does not preclude him from the performance of acts and duties which are simply incidents connected with the daily life of

men in any or all occupations." (Italics ours.)

In developing the case, the evidence brought to the jury "the vocation, profession, trade or calling" in which appellee had engaged before the accrual of her disability, and presented to the jury the issue as to her ability to perform the duties incident to such "occupation, profession, trade or calling." The evidence on that issue was conflicting; there was evidence supporting appellant's theory, which was controverted by appellee's testimony supporting the theory of permanent total disability. Under Judge Bond's definition, which we accept as sound law, had the jury found that appellee was able to perform "acts and duties" which constituted nothing more than simple incidents connected with her daily life, such finding would have been merely evidentiary and not determinative.

■ However, any doubt as to the meaning of the language, "Any employee shall be deemed totally disabled if sickness or disease continuously prevent the employee from performing any and every duty pertaining to his or her occupation," is removed by the instruction: "You are instructed that by the phrase 'permanent total disability' (if any) that prevented her, the said Mrs. H. S. Allen (if it did prevent her) from pursuing any occupation for wage or profit, as used in this connection, is meant such disability as presumably during the life of the said Mrs. H. S. Allen would prevent her from pursuing and performing substantially, or to some material extent, any and every part of the business pertaining to any occupation for wage or profit, or such disability as that ordinary care, in the preservation of her life and health, would require that she desist from pursuing any occupation whatever for wage or profit." This additional language embraced "any occupation for wage or profit" and, since the charge must be construed as a whole, was supplementary to the language of the first paragraph of the definition.

■ Appellant also briefs the following exception to the court's definition of "permanent total disability": "As drafted said definition does not define the total and permanent disability which the policy in the suit indemnifies against and which is comprehended in the contract sued upon, but the same is contrary to the terms of said policy, to the prejudice of this defendant."

The policy of insurance did not define "permanent total disability." In our statement above, we give the language of the policy upon which appellee predicates her disability, "that she be unable to engage in any occupation or employment for wage or profit." As we construe the court's charge, it was in explanation of the language of the insurance contract.

■ Special issues Nos. 3 and 4, given in our statement above, were not subject to the exception that they constituted a general charge and advised the jury the effect of its answers. The evidence most satisfactorily supports the jury's answers to these issues, and appellant has no assignment to the contrary.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

■ The policy in issue contains the following stipulation: "If any employee, before attaining the age of sixty years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit, * * * such employee shall be deemed to be totally and permanently disabled."

We quote the following paragraph from the charge copied in the original opinion: "If such total disability (if any) as mentioned in Subsection (b) immediately preceding, began before plaintiff, Mrs. H. S. Allen, was sixty years of age and thereafter presumably during her life, will prevent her from pursuing any occupation or employment for wage or profit, then she shall be deemed permanently and totally disabled."

This charge in substance submitted to the jury the facts which, on the statement of the policy, constituted total and permanent disability, and instructed the jury that, if such facts were found to exist, appellee should be "deemed permanently and totally disabled." On authority of our opinion Connecticut Gen. Life Ins. Co. v. Warner, Tex.Civ.App., 94 S.W.2d 514, 516, absolutely on all fours with the facts in this case, the charge copied above constituted a general charge. We quote as follows from the Warner case: "The court, in his charge to the jury, defined 'total and permanent disability' as follows: 'By the term "total and permanent dis-

ability" is meant that if said total disability, if any, began before reaching the age of sixty (60) years and presumably will, during his life prevent employee from pursuing any occupation for wages or profit, he shall be deemed to be totally and permanently disabled within the meaning of the policy in suit.' * * * * This definition or charge was verbatim the statement in the policy of what facts would, within the meaning of the policy, constitute total and permanent disability. We do not think that said charge was a definition of any legal term in the charge to which it related, but that it was subject to the objection urged by appellant that it was an instruction upon the facts of the case, that is, as to what facts would show total and permanent disability, and that portion of the charge reading, 'he shall be deemed to be totally and permanently disabled within the meaning of the policy in suit,' was a general charge as to the law pertaining to that phase of the case relating to the character and extent of disability covered by the policy sued on, and, being so, was clearly in violation of article 2189, supra."

The motion for rehearing is granted, and the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.